# Exhibit 4

DOCUMENT 320


ELECTRONICALLY FILED
11/23/2016 2:03 PM
02-CV-2015-901469.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

## IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

| | |
|---|---|
| RENE STIEGLER, III and ROBERT S. BLOCK, individually and as Trustee of the Robert S. Block Survivor's Trust, by and on behalf of themselves and derivatively on behalf of SHIPCOM, LLC, an Alabama limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> SHIPCOM LLC, an Alabama limited liability company; US HF CELLULAR COMMUNICATIONS, LLC, a Delaware limited liability company; VIRSENET LLC, a Delaware limited liability company; EDWARD BAYUK, an individual; JON RICHMOND, an individual; JOSEPH M. JACOBS, an individual; ARTHUR AMRON, an individual; PHILIP BRAUNSTEIN, an individual; RAYMOND A. WHITEMAN, an individual, and Global Wideband HF Net LLC, and JJ/CD CAPITAL, LLC, <br><br> Defendants. | CIVIL ACTION NO. <br><br> CV-2015-901469 <br><br><br><br><br><br><br><br><br><br><br><br><br> JURY DEMAND |

## FOURTH AMENDED COMPLAINT

COME NOW RENE STIEGLER III and ROBERT S. BLOCK, individually and as Trustee of the Robert S. Block Survivor's Trust, by and on behalf of themselves and, pursuant to Rule 23.1 of the Alabama Rules of Civil Procedure, derivatively on behalf of SHIPCOM, LLC (collectively, "Plaintiffs"), allege against SHIPCOM, LLC; US HF Cellular Communications LLC; Virsenet LLC; EDWARD BAYUK; JON RICHMOND; Global Wideband HF Net LLC; JOSEPH M. JACOBS, ARTHUR AMRON, PHILIP BRAUNSTEIN, RAYMOND A. WHITEMAN, and JJ/CD CAPITAL LLC, as follows:

## PARTIES

1.    Rene Stiegler, III ("Mr. Stiegler") is an individual resident of the State of Alabama, and is currently and was at the time of the transactions at issue herein a minority shareholder/member of ShipCom, LLC.

2.    Robert S. Block ("Mr. Block") is an individual resident of the State of Nevada and is Trustee of the Robert S. Block Survivor's Trust. Mr. Block and the Trust are currently and were at the time of the transactions at issue herein minority shareholders/members of ShipCom, LLC.

3.    ShipCom, LLC ("ShipCom") is an Alabama limited liability company with its registered office located at 2480 Government Street, Mobile, Alabama 36606.

4.    US HF Cellular Communications LLC ("USHFCC") is a Delaware limited liability company whose registered agent is located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. USHFCC is owned by VirseNet LLC and JJ/CD Capital, LLC ("JJ/CD"). USHFCC does business in the State of Alabama.

5.    Virsenet LLC ("Virsenet") (formerly known as VTS Communications LLC) is a Delaware limited liability company that was during a time at issue the manager of USHFCC, and whose registered agent is located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. Virsenet does business in the State of Alabama.

6.    Edward Bayuk is an individual resident of the State of California, claims to be the manager of Virsenet, claims to be the manager of USHFCC, is on the Board of Directors of USHFCC, claims to be the manager of Global Wideband HF Net LLC, is on the Board of Directors of Global Wideband HF Net LLC, and claims to be manager and President of ShipCom. Mr. Bayuk does business in the State of Alabama.

2

7.      Jon Richmond is an individual resident of the State of California, claims to be an officer of USHFCC, claims to be Chief Operating Officer of Global Wideband HF Net LLC and claims to be Chief Executive Officer of ShipCom.  Mr. Richmond does business in the State of Alabama.

8.      Global Wideband HF Net LLC (now Global HF Net LLC) ("Global") is a Delaware limited liability company whose registered agent is located at 2711 Centerville Rd., Suite 400, Wilmington, Delaware 19808.  Global is owned by JJ/CD and Terlingua LLC.  Global does business in the State of Alabama.

9.      JJ/CD is directly owned (50% each) and controlled by CD Holding Company LLC and Jacobs Holdings LLC.  CD Holding Company LLC is owned (97%) and controlled by the Charles E. Davidson 2001 Family Trust, and Jacobs Holdings LLC is owned (76%) and controlled by Joseph M. Jacobs.  According to FCC filings by JJ/CD, JJ/CD holds controlling interest in ShipCom, including WLO, the call letters for ShipCom's Mobile facility and related frequencies.  JJ/CD does business in Alabama.

10.     Joseph M. Jacobs, Arthur Amron, Philip Braunstein and Raymond A. Whiteman (along with Edward Bayuk) are the Board of Directors of both USHFCC and Global.  Messrs. Jacobs and Whiteman are indirect owners of USHFCC and Global.  Messrs. Jacobs and Amron have personally participated in ShipCom Members' meetings.  According to FCC filings, Mr. Jacobs is the FCC contact for and an interest holder in WLO, the ShipCom call letters for its Mobile facility and related frequencies.  All of the individual defendants directed the actions alleged herein (and the resulting intentional and negligent torts) specifically against ShipCom (an Alabama company), its members and agents (at least one being an Alabama resident).

3

11.     USHFCC, Virsenet, JJ/CD, Edward Bayuk, Jon Richmond, Joseph M. Jacobs, Arthur Amron, Philip Braunstein and Raymond A. Whiteman are collectively referred to as the "USHFCC Defendants."

## FACTS

### Corporate Web

1.     USHFCC was formerly called US HF Communications Company LLC.

2.     USHFCC owns 80% of ShipCom.

3.     Mr. Stiegler and Mr. Block, individually and as Trustee, collectively own the remaining 20% of ShipCom.

4.     USHFCC was during a time at issue managed by Virsenet, and USHFCC is owned by Virsenet (in turn owned by individuals and trusts controlled by Edward Bayuk, Raymond Whiteman, Frank Buquicchio, Spencer Tyndall and Domenic Sirignano) and by JJ/CD (in turn owned by LLCs controlled by Joseph Jacobs and Charles Davidson).  At least as of November 24, 2014, overall management of USHFCC and Global resided in a board of directors consisting of Edward Bayuk, Raymond Whiteman, Joseph Jacobs, Arthur Amron and Paul Braunstein.  These boards are controlled by JJ/CD Capital LLC and its principal, Joseph Jacobs, through appointment of 3 of 5 directors, including Joseph Jacobs.

5.     Virsenet's managing member is Mr. Bayuk.

6.     Mr. Bayuk claims to be President and manager of ShipCom.

7.     Mr. Richmond claims to be Chief Executive Officer of ShipCom.

### Background

8.     ShipCom operates a maritime communications network that facilitates ship-to-ship and ship-to-shore communications using a spectrum of high frequency ("HF") radio waves.

4

DOCUMENT 320

9.     These HF radio waves are transmitted and received using a leased antenna farm and associated buildings located in Mobile County, Alabama, owned by ShipCom Nevada LLC, which is in turn owned by Mr. Block.

10.     Once the primary means of ship-to-ship and ship-to-shore communications, HF radio communications were largely supplanted as satellite and wireless technology emerged and eventually dominated the maritime communications market. However, HF radio waves remain an important backup in case the newer technologies are not available.

11.     As part of the maritime HF radio communications business, the Federal Communications Commission ("FCC") requires ShipCom to own licenses for the HF radio spectrum ShipCom uses.

12.     The FCC licenses restrict ShipCom's use of the HF radio spectrum to ship to ship and ship to shore communications and do not allow ShipCom to regularly use its frequencies for other communications.

13.     ShipCom's network is comprised of certain high seas public coast stations that either receive HF radio communications from ships or relay communications between ships. These stations include WLO and WCL in Mobile, Alabama; KLB in Silvana, Washington; KNN in Marina del Rey, California; and WSC in West Creek, New Jersey. The signals are sent and received using the Mobile County antenna farm, mentioned above.

14.     ShipCom also maintains a continuous watch on certain HF bands (4, 6, 8, 12, 16, 18/19, 22, and 25/26 MHz) for voice and data transmissions as part of ship to ship and ship to shore communications.

DOCUMENT 320

15.     When Hurricane Katrina hit the Gulf Coast in 2005, the storm wiped out the regular communications networks of the United States Coast Guard and other first responders, leaving them unable to communicate in the crisis's aftermath.

16.     Since ShipCom's network did not require satellites, telephone lines, or other typical communications networks that use newer technology, first responders were instead able to use ShipCom's HF radios to communicate and to coordinate rescue and relief efforts. Because ShipCom's HF radio frequencies were used in an emergency that posed a danger to either life or property, ShipCom was authorized to use the frequencies in this way.

17.     After Katrina, the city of Troy, Michigan contacted ShipCom to ask whether ShipCom would provide a monthly testing and training service for city employees on ShipCom's HF radio equipment, in case Troy ever experienced a disaster that eliminated its other forms of communication.

18.     Recognizing a new opportunity for its technology, ShipCom petitioned the FCC for a waiver to use its HF radio spectrum licenses for land-based communications during and in the aftermath of disasters.

19.     The FCC granted ShipCom the waiver in May 2010, thereby allowing ShipCom to use its HF radio frequencies – normally restricted from land-based use – for "emergency back-up communications for first responders in the event of a catastrophic event that disrupts normal local wired and wireless communications." The waiver also allowed ShipCom to provide its communications service on a non-emergency basis for "necessary testing and training." (*See* Federal Communications Commission Order, *In the Matter of SHIPCOM, LLC Request for Waiver*, DA 10-831, WT Docket No. 10-2 (Released May 12, 2010). With the permission of the

6

DOCUMENT 320

FCC, first responders could operate under the ShipCom FCC licenses, and ShipCom could charge for this bundle of services.

20. Once the waiver was obtained, ShipCom became the only provider/facilitator of emergency HF radio communications services in the country and actively promoted that part of its business.

<u>ShipCom's Pre-Sale Business</u>

21. ShipCom had a contract with the National Oceanic and Atmospheric Administration (NOAA) to take weather observations reported by ships and relay that information to NOAA.

22. ShipCom also had a contract with the United States Coast Guard to relay ships' positions at sea.

23. When the United States passed the Telecommunications Act of 1996, Section 206 of that law removed the requirement that all ships have a radio operator on board, and allowed ships instead to install equipment that, when activated, would notify all ships in the area of the distressed ship's position (an "emergency button," of sorts).

24. After receiving the FCC waiver, ShipCom capitalized on the "emergency button" notion and assembled equipment that would be installed in hospitals, nursing homes, and other similar entities to provide a means of back-up communication when the "emergency button" was activated, if a catastrophe disabled other forms of communication. ShipCom also offered emergency HF radio communications services to first responders, law enforcement and other governmental entities. ShipCom charged a monthly fee for the service, actively marketed the service and had contracts in negotiations or lined up.

25. ShipCom retained its ship-to-ship and ship-to-shore business.

## Sale of ShipCom

26.     Investors and other companies took notice of ShipCom's unique HF radio communications service and the resurgence of a need for HF radio communication technology in the event of a catastrophe.

27.     In or around October 2011, US HF Communications Company LLC was formed to acquire an 80% interest in ShipCom.

28.     US HF Communications Company LLC obtained 80% of ShipCom after February 23, 2012, when the two companies entered into a $5 million Purchase Agreement.

29.     Mr. Stiegler and Mr. Block, individually and as Trustee, collectively retained 20% ownership of ShipCom.

30.     Following the sale to USHFCC, Edward Bayuk purported to be President and a manager of ShipCom, and Mr. Richmond purported to be Chief Executive Officer of ShipCom.

31.     On or about August 13, 2012, US HF Communications Company LLC amended its certificate of formation to change its name to US HF Cellular Communications LLC – the entity made a party to this action.

## USHFCC's Dealings

32.     Virsenet, USHFCC's manager, and Mr. Bayuk, purportedly as manager of ShipCom, entered into a Network Management Agreement with Intrado in December 2012. Intrado builds 9-1-1 emergency call centers throughout the United States and Canada.

33.     The Network Management Agreement gave Intrado "full and complete access to and use of [USHFCC/ShipCom] property, systems, and other assets which are used by [USHFCC/ShipCom] for Maritime Services ('License Assets')... which will include the transfer to [Intrado] of employees currently servicing the [USHFCC/ShipCom] Assets...."

8

34.     The USHFCC Defendants, through Intrado, canceled or caused to be canceled all of ShipCom's contracts, except those for the USCG and NOAA.

35.     The USHFCC Defendants, through Intrado, also fired all of ShipCom's employees. However, after realizing that ShipCom's unique HF radio communications service could not function without HF radio operators, the USHFCC Defendants attempted to rehire ShipCom's terminated employees. Such efforts were futile, though, and USHFCC/ShipCom ended up with a mostly new staff with very little experience operating HF radio communications.

36.     The USHFCC Defendants' and Intrado's acts of canceling contracts and firing ShipCom's employees gave ShipCom's existing or potential clients the impression that ShipCom was out of business or going out of business.

37.     USHFCC also entered into an agreement with Rockwell Collins/ARINC, which owns and operates the largest HF communications infrastructure in the world, "to provide full infrastructure support for [USHFCC's] HF Service."

38.     On November 24, 2014, the USHFCC Board of Directors approved the Rockwell/ARINC contract.

39.     The Rockwell Collins/ARINC agreement was signed only by USHFCC and not ShipCom, although ShipCom owns the Licenses and Waiver that are the subject of the Rockwell Collins/ARINC agreement. Likewise, under the agreement, revenues are paid to USHFCC and not ShipCom. As a result of the agreement, Rockwell Collins/ARINC acquired de facto control over the ShipCom licenses and waiver. Following the agreement, Rockwell Collins/ARINC controlled and used the ShipCom frequencies, although Rockwell Collins/ARINC was never authorized by ShipCom to do so.

40.     Rockwell Collins/ARINC published a video to YouTube on March 10, 2015, that refers to use of ShipCom's FCC waiver and advertises that Rockwell/ARINC "utilize[e] the highly reliable HF radio spectrum specifically dedicated for disasters only." Rockwell/ARINC also claim they are the "only FCC-authorized provider of HF emergency backup communications" and that their service "assures mission-critical connectivity for dispatch and emergency operations, hospitals, first responders, critical infrastructure, and federal, state and local agencies when it matters most...."

41.     The USHFCC Defendants never intended ShipCom to benefit from the contracts with Intrado and Rockwell/ARINC, despite the fact that ShipCom's FCC HF radio spectrum licenses and related waiver are the cornerstone of USHFCC's, Intrado's, Rockwell's, and ARINC's service.

42.     USHFCC's own Operating Agreement states that USHFCC

shall be deemed the sole Licensee (as such term is defined in the Intrado Network Management Agreement) under the Intrado Network Management Agreement and that **all revenue for Licensee Services** (as such term is defined in the Intrado Network Management Agreement) **shall be paid to [USHFCC] and that any revenue paid to any other party,** including Virsenet, by Intrado Inc. or its Affiliates under such Intrado Network Management Agreement **shall be immediately remitted to [USHFCC]**.

43.     USHFCC claimed to itself own the ShipCom FCC licenses and waiver. For instance, USHFCC stated in a private offering memorandum that "USHFCC has been licensed by the FCC with the largest amount of HF radio spectrum in the world not allocated for military or aeronautical use. Primarily used by maritime subscribers, USHFCC HF spectrum is authorized by a FCC Waiver to operate on land when all existing forms of existing communication fail." Later in the memorandum USHFCC stated it "controls one of the largest assemblages of high frequency ('HF') radio licenses authorized by the ... FCC to operate as maritime channels. The

FCC granted [USHFCC] a waiver in 2010 to operate the HF licenses on land during a disaster when normal forms of communication such as cellular and satellite are inoperable." USHFCC made similar claims in written service proposals to Walt Disney Company and others.

44. USHFCC places great value on the ShipCom licenses and waiver. In a private offering memorandum, USHFCC offered 100 units (10% of USHFCC) for sale at $500,000 each, or *$50,000,000.00.* In other words, USHFCC values itself – **a company existing solely to acquire and run ShipCom** – at *$500 million.*

45. Mr. Stiegler and Mr. Block, individually and as Trustee, have demanded that USHFCC (care of Mr. Bayuk) confirm that ShipCom will receive all revenue from its FCC licensees and waiver:

> Please confirm that ShipCom, LLC ("ShipCom"), is the entity referred to as Licensee in first four "Whereas" recitals beginning on page 1 of the [Intrado] Management Agreement. Please also confirm that US HF Cellular Communications, LLC ("USHFCC") and Virsenet, LLC ("Virsenet") interpret the **entire** Management Agreement consistent with the express and unequivocal understanding and acknowledgement that ShipCom, and solely ShipCom, is the entity referred to as "Licensee" in the four Whereas clauses referenced above. If you disagree that ShipCom is the entity referred to as the Licensee in the four Whereas clauses referenced above, then please identify the entity that you contend is the Licensee. Please also confirm that ShipCom will be paid the revenue that it is entitled to, pursuant to the Membership Interest Purchase Agreement ("Membership Purchase Agreement"), by and among ShipCom and USHFCC, which is generated by the Maritime Services and the Emergency Land-Based HF Services, as defined in the Management Agreement. If you disagree that ShipCom is entitled to receive all of the revenue payable to the Licensee under the Management Agreement, then please identify the parties that are going to receive the revenue payable to the Licensee and the respective percentages that each shall receive.

(*See* June 13, 2013, letter from Mark Smallhouse to Edward Bayuk.)

46. There was no response to the demand. Any additional demands would be futile because a majority of the ShipCom managers are required to act, and there is no duly appointed majority.

47. In 2012 and 2013, the USHFCC Defendants and others associated with the USHFCC Defendants entered into an agreement with Globe Wireless Radio Services Inc. ("Globe") for purchase of Globe's business and assets (including its licenses) to be combined with ShipCom. Globe owns FCC HF licenses and is a direct competitor of ShipCom. The Globe transaction did not close, and USHFCC paid a $500,000 penalty to Globe.

48. On April 13, 2015, the individuals behind the trusts and LLCs owning USHFCC (through or with the assistance of Defendant Bayuk and Defendant Richmond) formed Global Wideband HF Net LLC ("Global") in Delaware, a sham entity formed for the improper purpose of usurping ShipCom's corporate opportunity.

49. On June 23, 2015, the Global Board of Directors voted to fund and close the transaction purchasing the Globe assets, a ShipCom corporate opportunity.

50. On June 23, 2015, the USHFCC Board of Directors voted to 1) file suit against Block and Stiegler to put pressure on them because they would be forced to retain Delaware counsel and incur additional legal expenses; 2) put financial pressure on Stiegler by no longer providing funding for his salary; and 3) put financial pressure on Stiegler by demanding payment of certain expenses.

51. In August 2015, Global (ultimately owned by the same trusts and LLCs owning USHFCC and again through or with the assistance of Defendant Bayuk and Defendant Richmond) purchased Globe or its assets.

52. Global then entered into a Network Management Agreement with USHFCC/ShipCom giving Global access to the ShipCom frequencies, and USHFCC effectively transferred to Global 325 ShipCom HF Channels purchased for ShipCom after USHFCC acquired its 80% interest in ShipCom.

12

53.     In August 2015, USHFCC filed suit in Delaware against Block and Stiegler, the USHFCC Defendants ceased to pay Stiegler his salary for work at ShipCom, and the USHFCC Defendants demanded Stiegler pay certain expenses (Stiegler subsequently paid the expenses into escrow).

54.     The USHFCC Defendants (acting through Defendant Bayuk, who had registered himself as ShipCom's FCC contact) allowed valuable ShipCom FCC licenses to expire.

55.     The USHFCC Defendants (acting through Defendant Richmond) failed to maintain and support ShipCom facilities in Mobile, Alabama, and elsewhere, further damaging the reputation of ShipCom and jeopardizing its FCC licenses.

<u>COUNT ONE</u>

**BREACH OF FIDUCIARY DUTY**
**(On Behalf of ShipCom Against the USHFCC Defendants)**

56.     Plaintiffs hereby adopt by reference the allegations of Paragraphs 1 through 55 hereinabove.

57.     As the majority member of ShipCom, USHFCC owes a fiduciary duty to ShipCom to not permit waste of corporate assets.

58.     USHFCC acts through the USHFCC Defendants, who caused USHFCC to breach its fiduciary duties to ShipCom.

59.     By utilizing the assets of ShipCom and by usurping ShipCom's business opportunities, the USHFCC Defendants breached their fiduciary duty to ShipCom.

60.     By directly competing with ShipCom through Global, the USHFCC Defendants breached their fiduciary duty to ShipCom.

61.     By failing to renew ShipCom Licenses, the USHFCC Defendants breached their fiduciary duty to ShipCom.

13

62. By failing to maintain, support and monitor ShipCom facilities in Mobile, Alabama, and elsewhere, the USHFCC Defendants breached their fiduciary duty to ShipCom.

63. ShipCom has been damaged thereby.

WHEREFORE, Mr. Stiegler and Mr. Block, individually and as Trustee, on behalf of ShipCom, demand compensatory damages of the USHFCC Defendants, interest, and attorneys' fees and costs.

## COUNT TWO

### SELF-DEALING / USURPATION OF CORPORATE OPPORTUNITY
### (On Behalf of ShipCom Against the USHFCC Defendants)

64. Plaintiffs hereby adopt by reference the allegations of Paragraphs 1 through 55 hereinabove.

65. By allowing the use of ShipCom assets by all Defendants and usurping the Globe opportunity, the USHFCC Defendants have shifted significant benefits to themselves and others.

66. The shifting of benefits and assets by the USHFCC Defendants from ShipCom to USHFCC and related parties constitutes a conflict of interest, self-dealing, and excessive compensation, and the purchase of Globe or its assets is a usurpation of the ShipCom corporate opportunity.

67. The direct competition with ShipCom through Global constitutes a conflict of interest, self-dealing and excessive compensation, and the purchase of Globe or its assets is usurpation of ShipCom's corporate opportunity.

68. ShipCom has been damaged thereby.

WHEREFORE, Mr. Stiegler and Mr. Block, individually and as Trustee, on behalf of ShipCom, demand compensatory damages of the USHFCC Defendants, interest, and attorneys' fees and costs.

## COUNT THREE

### UNJUST ENRICHMENT
**(On Behalf of ShipCom Against the USHFCC Defendants)**

69. Plaintiffs adopt by reference the allegations of Paragraphs 1 through 55 hereinabove.

70. The USHFCC Defendants have been unjustly enriched by the use of ShipCom assets and business opportunities.

WHEREFORE, Mr. Stiegler and Mr. Block, individually and as Trustee, on behalf of ShipCom, demand compensatory damages of the USHFCC Defendants, jointly and severally, plus interest and attorneys' fees and costs.

## COUNT FOUR

### DECLARATORY/INJUNCTIVE RELIEF
**(On Behalf of ShipCom Against the USHFCC Defendants)**

71. Plaintiffs adopt by reference the allegations of Paragraphs 1 through 55 hereinabove.

72. Mr. Stiegler and Mr. Block, individually and as Trustee, on behalf of ShipCom, petition the Court to declare that only ShipCom and no other Defendant or non-party has the right to use or transfer the ShipCom equipment, facilities, licenses, waivers and other assets, without fair compensation to ShipCom, and to declare that the Globe business and assets were a ShipCom corporate opportunity usurped by the USHFCC Defendants and the individuals and trusts behind the USHFCC and Global LCCs.

WHEREFORE, Mr. Stiegler and Mr. Block, individually and as Trustee, on behalf of ShipCom, pray that the Court will declare that only ShipCom and no other Defendant or non-party has the right to use the ShipCom equipment, facilities, assets and business opportunities

without fair compensation to ShipCom and further pray that the Court will permanently enjoin such, impose a constructive trust on the proceeds or assets and grant such further or different relief as may be appropriate in the premises.

### COUNT FIVE

### CUSTODIAN
**(Individually and on Behalf of ShipCom Against the USHFCC Defendants)**

73.    Plaintiffs adopt by reference the allegations of Paragraphs 1 through 55 hereinabove.

74.    The USHFCC Defendants are guilty of ongoing fraud, oppression, and malice.

75.    The ShipCom assets are being misapplied or wasted.

76.    The ShipCom members are deadlocked in election of managers and officers of ShipCom, and no one is presently authorized to conduct business on behalf of ShipCom.

77.    The Court should appoint a custodian for ShipCom.

WHEREFORE, Mr. Stiegler and Mr. Block, individually and as Trustee, on behalf of ShipCom and individually, pray that the Court will appoint a custodian for ShipCom.

### COUNT SIX

### SQUEEZE OUT
**(Individually Against the USHFCC Defendants)**

78.    Plaintiffs adopt by reference the allegations of Paragraphs 1 through 55 hereinabove.

79.    As the majority shareholder/member of ShipCom and as persons who have the authority to direct and oversee the affairs of ShipCom, the USHFCC Defendants had a duty of loyalty and care and a duty of good faith and fair dealing to minority members.

16

DOCUMENT 320

80. The USHFCC Defendants intentionally attempted to squeeze out and oppress Mr. Stiegler and Mr. Block, individually and as Trustee, and to devalue Mr. Stiegler's, Mr. Block's, and the Trust's ShipCom shares for the purpose of obtaining said shares.

81. The USHFCC Defendants have attempted to deny Mr. Stiegler's and Mr. Block's reasonable expectation of participation in management of ShipCom, their right to share in the company's income, and Stiegler's right to payment for his services to ShipCom.

82. Mr. Stiegler, Mr. Block, and the Trust have been damaged thereby.

WHEREFORE, Mr. Stiegler and Mr. Block, individually and as Trustee, demand punitive damages and compensatory damages of the USHFCC Defendants, interest, and costs.

<u>COUNT SEVEN</u>

**CONVERSION**
**(On Behalf of ShipCom Against the USHFCC Defendants)**

83. Plaintiffs adopt by reference the allegations of Paragraphs 1 through 55 hereinabove.

84. Defendants' misappropriation and use of ShipCom's assets and business opportunities for the USHFCC Defendants' own benefit constitute wrongful and willful conversion of property in which Plaintiffs have an interest.

85. ShipCom was damaged as a result.

WHEREFORE, Mr. Stiegler and Mr. Block, individually and as Trustee, on behalf of ShipCom, demand compensatory and punitive damages of the USHFCC Defendants, plus interest, attorneys' fees, and costs.

DOCUMENT 320

## COUNT EIGHT

### NEGLIGENCE
### (On Behalf of ShipCom Against the USHFCC Defendants)

86.     Plaintiffs adopt by reference the allegations of Paragraphs 1 through 55 hereinabove.

87.     The USHFCC Defendants failed to exercise due care in fulfilling their duties and obligations as the majority shareholder/member of ShipCom by, among other things, failing to ensure ShipCom received its due share for the various business deals built upon the use of ShipCom assets, wrongfully transferring ShipCom assets for the benefit of the USHFCC Defendants without compensation to Plaintiffs, usurping ShipCom's corporate opportunity, competing with ShipCom in breach of their duty of loyalty to ShipCom, allowing lapse of ShipCom licenses, and failing to maintain, support and monitor the ShipCom facilities in Mobile, Alabama and elsewhere.

88.     As a result of the USHFCC Defendants' negligence, ShipCom has been damaged.

WHEREFORE, Mr. Stiegler and Mr. Block, individually and as Trustee, on behalf of ShipCom, demand compensatory damages of the USHFCC Defendants, and attorneys' fees and costs.

## COUNT NINE

### WILLFUL OR WANTON CONDUCT
### (On Behalf of ShipCom Against the USHFCC Defendants)

89.     Plaintiffs adopt by reference the allegations of Paragraphs 1 through 55 hereinabove.

90.     The USHFCC Defendants violated their fiduciary duty to ShipCom by acting with reckless indifference to the consequences of their action or inaction. The USHFCC Defendants

failed to provide due services to ShipCom by, among other things, failing to ensure ShipCom received its due share for the various business deals built upon the use of ShipCom assets, wrongfully transferring ShipCom assets for the benefit of the USHFCC Defendants without compensation to Plaintiffs, usurping ShipCom's corporate opportunity, competing with ShipCom in breach of their duty of loyalty to ShipCom, allowing lapse of ShipCom Licenses, and failing to maintain, support and monitor the ShipCom facilities in Mobile, Alabama and elsewhere.

91.     The USHFCC Defendants violated their fiduciary duty with a design or purpose to inflict injury upon ShipCom and its minority members.

92.     As a result of the USHFCC Defendants' willful and/or wanton conduct, ShipCom has been damaged.

WHEREFORE, Mr. Stiegler and Mr. Block, individually and as Trustee, on behalf of ShipCom, demand compensatory and punitive damages of the USHFCC Defendants, and attorneys' fees and costs.

## COUNT TEN

### FRAUD
### (Individually and On Behalf of ShipCom Against the USHFCC Defendants)

93.     Plaintiffs adopt by reference the allegations of Paragraphs 1 through 55 hereinabove.

94.     The USHFCC Defendants usurped corporate opportunities of ShipCom and breached their fiduciary duty to ShipCom by, among other things, failing to ensure ShipCom received its due share for the various business deals built upon the use of ShipCom assets, and wrongfully transferring ShipCom assets and usurping its business opportunities for the benefit of the USHFCC Defendants without compensation to Plaintiffs.

19

95.     The USHFCC Defendants' willful and wrongful concealment of material facts, including, without limitation, their misappropriation of ShipCom's assets and business opportunities for their personal gain and their misrepresentation to Plaintiffs that ShipCom would receive a percentage of the business built upon the use of ShipCom and Globe assets, constitute fraud, deceit, and suppression of material facts which have caused injury to Plaintiffs.

96.     The USHFCC Defendants, as the majority shareholder/member of ShipCom, owed ShipCom a duty of disclosure to ShipCom's other shareholders/members. Plaintiffs relied to their detriment on the USHFCC Defendants' nondisclosure of material facts, including the USHFCC Defendants' intention to use ShipCom's assets and business opportunities for their benefit without ShipCom receiving its due share of the various business deals.

97.     On information and belief, the USHFCC Defendants misrepresented their true intentions regarding ShipCom assets, misrepresented the monetary percentage from business deals that would come to ShipCom, and used ShipCom's assets and business opportunities for their own personal gain.

98.     As a result, Plaintiffs were damaged.

WHEREFORE, Mr. Stiegler and Mr. Block, individually and as Trustee, on behalf of ShipCom and individually demand compensatory and punitive damages from the USHFCC Defendants, and attorneys' fees and costs.

<u>COUNT ELEVEN</u>

**STATE LAW TRADEMARK INFRINGEMENT**
**(On Behalf of ShipCom Against the USHFCC Defendants)**

99.     Plaintiffs adopt by reference the allegations of Paragraphs 1 through 55 hereinabove.

20

DOCUMENT 320

100.   The USHFCC Defendants misappropriated ShipCom's trade name/trademark when they:

   a.  advertised USHFCC's involvement in post-Katrina emergency HF radio communications; and/or

   b.  advertised USHFCC as the sole owner/operator of ShipCom HF radio communications and licenses since 1935; and/or

   c.  otherwise advertised and sold ShipCom's HF radio communication services as those of USHFCC, Intrado, Rockwell, or ARINC; and/or

   d.  claimed to be the only FCC authorized HF radio communications emergency backup provider.

101.   The USHFCC Defendants did so as part of a pattern and practice of conduct intended to trade on the property of ShipCom, without benefit to ShipCom.

102.   These actions were intended to and did cause others to believe that USHFCC was involved with post-Katrina communications; that the USHFCC Defendants have been the sole owner/operator of HF radio communications and licenses since 1935; and that USHFCC, Intrado, Rockwell, and ARINC are the sole provider of emergency HF radio communication services. These actions were done with the purpose of obtaining financial gain for the USHFCC Defendants, Intrado, Rockwell, and ARINC, to the detriment of ShipCom.

103.   The USHFCC Defendants' actions were fraudulent and constitute misappropriation of ShipCom's trade name and trademark in violation of Ala. Code §§ 8-12-1, et seq.

DOCUMENT 320

WHEREFORE Mr. Stiegler and Mr. Block, individually and as Trustee, on behalf of ShipCom, demand compensatory and punitive damages against the USHFCC Defendants, Rockwell and ARINC plus costs, and any other relief this Court deems appropriate.

COUNT TWELVE

STATE LAW DECEPTIVE TRADE PRACTICES<br>(On Behalf of ShipCom Against the USHFCC Defendants)

104.    Plaintiffs adopt by reference the allegations of Paragraphs 1 through 55 hereinabove.

105.    The USHFCC Defendants engaged in deceptive trade practices in violation of Ala. Code § 8-19-1 et seq. when they:

      a.  Passed off ShipCom's services as those of USHFCC, Intrado, Rockwell, and/or ARINC;

      b.  Caused confusion or misunderstanding as to the source of emergency HF radio communication services.

106.    As a result ShipCom was damaged.

WHEREFORE Mr. Stiegler and Mr. Block, individually and as Trustee, on behalf of ShipCom, demand compensatory and punitive damages against the USHFCC Defendants, Rockwell and ARINC, plus costs, and any other relief this Court deems appropriate.

COUNT THIRTEEN

ACCOUNTING<br>(On Behalf of ShipCom Against All Defendants)

107.    Plaintiffs adopt by reference the allegations of Paragraphs 1 through 55 hereinabove.

108.    Mr. Stiegler and Mr. Block, individually and as Trustee, on behalf of ShipCom, are unsure whether ShipCom has been tendered all amounts due it for use of ShipCom assets.

109.    ShipCom has been damaged thereby.

WHEREFORE, Mr. Stiegler and Mr. Block, individually and as Trustee, on behalf of ShipCom, demand an accounting by all Defendants of all amounts for use of ShipCom's assets.

## COUNT FOURTEEN

### CONSPIRACY
### (Individually and On Behalf of ShipCom Against the USHFCC Defendants)

110.    Plaintiffs adopt by reference the allegations of Paragraphs 1 through 55 hereinabove.

111.    All USHFCC Defendants conspired among themselves and with others in effectuating the squeeze out, conversion, transfers, usurpation of corporate opportunity, fraudulent activity, trademark infringement, deceptive trade practices and lapse of ShipCom licenses alleged hereinabove by planning and actively participating in said activity.

112.    As a result of the squeeze out, conversion, transfers, usurpation of corporate opportunity, fraudulent activity, trademark infringement, deceptive practices and lapsed licenses Plaintiffs have been damaged.

WHEREFORE, Mr. Stiegler and Mr. Block, individually and as Trustee, on behalf of ShipCom and individually demand (i) judgment jointly and severally against each of the USHFCC Defendants for compensatory and punitive damages in an amount to be determined by the jury, plus Plaintiffs' attorneys' fees and expenses incurred in this proceeding, and (ii) that the Court declare that ShipCom is entitled to all proceeds proceeding from any and all contracts premised upon the use of ShipCom's assets.

23

DOCUMENT 320

## COUNT FIFTEEN

### (On Behalf of ShipCom Against the USHFCC Defendants and Global)

113.    Plaintiffs adopt by reference the allegations of Paragraphs 1 through 55 hereinabove.

114.    Global holds assets (or access to assets) that were transferred from ShipCom for either insufficient or no consideration.

115.    Global holds assets formerly owned by Globe and others and the purchase and use of those assets was a ShipCom opportunity.

116.    The transfers, access to assets, and purchases for Global were in breach of fiduciary duties of loyalty, due care and good faith and fair dealing owed to ShipCom and its members by the USHFCC Defendants and the individuals behind the USHFCC Defendants and Global.

117.    An equitable or constructive trust should be imposed on the Global assets in favor of ShipCom.

WHEREFORE, ShipCom prays that the Court will impose an equitable or constructive trust on Globe and all of its assets and in favor of ShipCom, interest, attorneys' fees and costs.

ARMBRECHT JACKSON LLP
P. O. Box 290
Mobile, AL 36601
(251) 405-1300      (Telephone)
(251) 432-6843      (Facsimile)


By:____ /s/ Edward A. Dean_____
          EDWARD A. DEAN (DEA005)
          ead@ajlaw.com

Attorneys for Plaintiffs

24

**PLEASE SERVE DEFENDANTS**
**VIA CERTIFIED MAIL AS FOLLOWS:**

Joseph M. Jacobs
c/o Wexford Capital LP
777 South Flagler Drive
West Palm Beach, FL 33401

Arthur Amron
c/o Wexford Capital LP
777 South Flagler Drive
West Palm Beach, FL 33401

Philip Braunstein
c/o Wexford Capital LP
777 South Flagler Drive
West Palm Beach, FL 33401

Raymond A. Whiteman
c/o Stellex Capital Management LP
900 Third Ave., 22nd Floor
New York, NY 10022

JJ/CD Capital LLC
777 South Flagler Drive
West Palm Beach, FL 33401

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2016, I electronically filed the foregoing with the

Clerk of Court using the AlaFile Electronic Filing System, which will send notification of such

filing to the following:

William M. Lyon, Jr.
Lyon Law Firm, P.C.
P. O. Box 8331
Mobile, AL 36689-0331

/s/ Edward A. Dean

25

DOCUMENT 320

STATE OF ALABAMA                    )

COUNTY OF MOBILE                    )

## VERIFICATION

I, the undersigned RENE STIEGLER, III, being first duly sworn, depose and say:

I am a resident citizen of Mobile County, in the State of Alabama.  I am a Plaintiff named in the foregoing Fourth Amended Complaint.  I have read the Fourth Amended Complaint, and the facts stated therein are true and correct according to my information, knowledge and belief.

_____
RENE STIEGLER, III

SWORN TO AND SUBSCRIBED
BEFORE ME, this the _21st_ day of
_November_, 2016.

_____
NOTARY PUBLIC

[Affix Notarial Seal]

My Commission Expires: _3/4/2020_

26

DOCUMENT 320

STATE OF NEVADA )

COUNTY OF WASHOE )

<u>VERIFICATION</u>

I, the undersigned ROBERT S. BLOCK, being first duly sworn, depose and say:

I am a resident citizen of Washoe County, in the State of Nevada. I am a Plaintiff named

in the foregoing Fourth Amended Complaint. I have read the Fourth Amended Complaint, and

the facts stated therein are true and correct according to my information, knowledge and belief.

ROBERT S. BLOCK and
ROBERT S. BLOCK as Trustee of the
Robert S. Block Survivor's Trust

SWORN TO AND SUBSCRIBED
BEFORE ME, this the _____ day of
_____, 2016.

NOTARY PUBLIC

[Affix Notarial Seal]

My Commission Expires: _____

MEGAN BRITTANY KIGHT
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 08-107184-2 - Expires July 1, 2018

918454

27